UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Jerry Lewis Boyd, #233212, | ) | C/A No. 4:09-2176-HFF-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Linda M. McNabb; Richard C. Bearden; Doctor Koon; Doctor J. Woods; Doctor Walsh, | ) ) ) ) | |
| | ) | |
| Respondent. | ) | |

## I. PROCEDURAL BACKGROUND

The plaintiff, Jerry Boyd, filed this action on August 18, 2009, alleging various claims for violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] Plaintiff filed a motion for default judgment on September 15, 2009. Defendants Doctors Koon and Walsh filed a motion to dismiss on October 13, 2009. The undersigned issued an order filed October 14, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975), advising the plaintiff of the motion to dismiss procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response.

Defendants Bearden and McNabb filed a motion for summary judgment on January 22, 2010. The undersigned issued an order filed January 25, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975), advising the plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

## II. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

In the complaint, plaintiff alleges that defendants violated his constitutional rights while he was housed at Livesay Correctional Institution and Tyger River Correctional Institution. Based on the notice of change of address filed by the plaintiff, it appears plaintiff is no longer incarcerated. In his complaint, plaintiff alleges he did not receive proper medical treatment after he complained of an injury to his hand in August 2007. Plaintiff requests actual and punitive damages.

Motion to dismiss

Defendants Koon and Walsh filed a motion to dismiss asserting they are not properly before the court, pursuant to Rule 4, FRCP, and must be dismissed pursuant to Rule 12(b)2, 4, 5 FRCP. Based on a review of the docket sheet in this case (Docket entries #15, 16, and 17), the returns were unexecuted as to Doctors Walsh, Koon, and Woods. Each of said returns stated that SCDC had no known doctor by that name at the institution and "no record found in DMV." (Id.). Therefore, service of process has not been affected as to these defendants. Therefore, it is recommended that this action be dismissed as to these named defendants.

### B. STANDARD FOR SUMMARY JUDGMENT

Defendants McNabb and Dr. Bearden filed a motion for summary judgment asserting that they cannot be held liable under 42 U.S.C. §1983 as they are entitled to Eleventh Amendment immunity, plaintiff has failed to exhaust his administrative remedies with respect to the allegations against these defendants, plaintiff has failed to state a constitutional claim in regards to his medical

care, and they are entitled to qualified immunity.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements

of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants have pleaded the affirmative defense of failure to comply with the PLRA's exhaustion requirement and have moved for summary judgment on that basis. Defendants submitted the affidavit of Mary Coleman who attests that she is employed by the SCDC as Branch Chief for the Inmate Grievance Branch. (Doc. #34-4-3). Coleman asserts that plaintiff's Grievance Number KRCI-0124-09, submitted on January 21, 2009, was the first grievance filed by plaintiff with regard to the injury he allegedly sustained to his thumb in 2007. (Id.). Coleman attests that the grievance was returned to plaintiff unprocessed by the Inmate Grievance Coordinator on January 22, 2009, because plaintiff did not timely file his grievance pursuant to SCDC Policy GA-01.12 "Inmate Grievance System" which required an inmate to fill out a Step 1 grievance form and submit the form within fifteen days of the alleged incident of which the inmate complains. (Id.). As plaintiff failed to submit a timely grievance, it is was not processed.

Plaintiff attached copies of grievance forms to his complaint while at Kershaw Correctional Institution (KCI). A review of the Step 1 Grievance form, KRCI 0225-09, reveals plaintiff asserts his grievance is for medical indifference for February 9, 2009, when he went to medical for a follow-up of continued complaints with regard to his right thumb at KCI. However, plaintiff has not provided any evidence that he filed timely grievance forms and exhausted his administrative remedies with regard to his claims of medical indifference as to these defendants. Dr. Bearden treated plaintiff while at Livesay Correctional Institution and Tyger River Institution but did not treat plaintiff after 2008, when he was transferred to KCI. Dr. Bearden attests in his affidavit that he

signed off on two notes in the medical record in August and October of 2008, when the doctor at the KCI was not available but he had no involvement in plaintiff's treatment after he was sent to KCI. (See Bearden's affidavit).

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C. 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the SCDC grievance process. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); *see* Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001)(exhaustion required even though plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001)(exhaustion required even though plaintiff claimed he was afraid); *see also* Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001)(unpublished opinion)(applying Booth v. Churner to affirm district court's denial of relief to plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006).

Based on the evidence presented, plaintiff has failed to show that he exhausted his administrative remedies with regard to the allegations against defendants McNabb and Bearden. It appears he may have exhausted his administrative remedies with regards to certain claims of medical indifference while at KCI but not as to allegations pertaining to these defendants who had no personal involvement with plaintiff once he was transferred to KCI. Therefore, it is recommended that defendants' motion for summary judgment (doc. #34) be granted for failure to exhaust administrative remedies.

In the alternative, the undersigned will briefly address the merits.

## D. ANALYSIS

<u>Medical Indifference</u>:

Plaintiff has alleged that he was not provided with proper medical care for an injury to his hand/thumb beginning in August 2007. Plaintiff alleges the defendants were indifferent to his needs.

Defendants Bearden and McNabb filed their motion for summary judgment. These defendants assert that defendant McNabb provided no treatment to plaintiff. Defendants submitted Dr. Bearden's affidavit along with a copy of plaintiff's medical records. Dr. Bearden attests that Ms. McNabb is not a medical professional but was the person who scheduled appointments when they were approved and had no direct dealings with the plaintiff. (Bearden's affidavit). In his affidavit, Dr. Bearden discussed the plaintiff's medical treatment related to his thumb while he treated him at Livesay Correctional Institution and Tyger River Correctional Institution. (<u>Id.</u>). Plaintiff first began complaining with his hand on August 16, 2007, when he told a correctional officer that his right thumb had been hurting. (<u>Id.</u>). Plaintiff was seen in medical on August 17, 2007, and referred

to Dr. Bearden who saw plaintiff on August 30, 2007. (Id., and medical records). Dr. Bearden found no objective findings, other than mild swelling and made an initial diagnosis of trigger finger which is a tendon problem that can be caused by repetitive action. (Id.). Dr. Bearden order x-rays, a splint and medications and gave the plaintiff range of motion exercises. The x-ray taken on September 4, 2007, revealed the thumb was found to be within normal limits. (Id.). Plaintiff was seen in medical by Dr. Bearden for continued complaints of a sore thumb on September 7, 2007, and September 20, 2007. Dr. Bearden referred plaintiff to the orthopedic clinic for a consult. Plaintiff was seen in the orthopaedic clinic on October 22, 2007, and plaintiff refused treatment at that time and was sent back to SCDC. (Id.). On November 28, 2007, it was noted that plaintiff stated he was ready for follow-up treatment with the orthopaedic clinic which Dr. Bearden approved. Plaintiff was seen in the orthopaedic clinic on February 4, 2008. (Id.). The medical note of February 5, 2008, from SCDC stated plaintiff indicated he was without pain and did not want to do anything other than to continue range of motion exercises on his own. (Id.). Plaintiff was seen several times while at Tyger River Correctional Institution and did not complain of any problems with his thumb. (Id.). Plaintiff was transferred to Kershaw Correctional Institution and Dr. Bearden was no longer involved in his treatment other than to sign off on two other notes when the doctor at KCI where plaintiff was housed was not available but had no involvement in plaintiff's treatment after plaintiff was sent to KCI.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs;
> if the authorities fail to do so, those needs will not be met. . . . We

7

> therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S.

825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v.

9

Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

The plaintiff has failed to show that he was denied medical treatment. He asserts he was seen by the doctors and received x-rays but did not agree with there diagnosis or treatment. As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided or the diagnosis, not that he was completely denied medical treatment. Plaintiff was seen by medical and Dr. Bearden on several occasions, was sent for x-rays, received a splint, and was sent for an orthopaedic consult. Additionally, plaintiff has failed to show that he had a serious medical need of which defendants knew about and consciously ignored. Plaintiff has not shown that any conduct by the defendants "shocks the conscious" as required by Miltier v. Beorn, supra.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff by the defendants in this action.[2]

---

[2] Any allegations of medical indifference against defendant McNabb should be dismissed as she is not medical personnel and plaintiff has not shown that she interfered with plaintiff's medical care. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical

Qualified Immunity

Defendants argue they are entitled to qualified immunity as there were acting within the course of their employment and did not violate any clearly established laws.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly

---

staff as to the proper course of treatment. Id. Under these principles, the plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against defendant McNabb who is non-medical personnel.

11

established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. Plaintiff fails to show that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that defendants' motion for summary judgment be granted on the basis of qualified immunity.

Eleventh Amendment Immunity

The defendants contend that the plaintiff's §1983 claims against the defendants for money damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity. Defendants also argue that the action against the defendants should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as employees of the SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, are not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy

> many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

(Id. at 66)

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that the defendants were employees of the SCDC and, thus, are entitled to Eleventh Amendment immunity from monetary damages against claims against them in their official capacities.

### E.  PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### III. DEFAULT JUDGMENT

On September 15, 2009, plaintiff filed a motion for default judgment asserting that he the complaint was filed on August 13, 2009, and the summons and complaints were served on defendants on August 13, 2009. Plaintiff asserts that more than twenty (20) days had expired and no response filed.

It is recommended that this motion for default judgment (doc. #12) be denied. Based on the court's docket sheet, the defendants Bearden, and McNabb were served on September 23, 2009, and September 25, 2009, respectively, making their responsive pleading due on or before October 13 and 15, 2009. These defendants filed an answer on October 13, 2009. The returns were unexecuted as to the remaining defendants.

### IV. CONCLUSION

For the reasons stated herein, it is RECOMMENDED that the motion for summary judgment filed by defendants Bearden and McNabb (doc. #34 ) be GRANTED and the motion to dismiss filed by Doctors Koon and Walsh (doc. #.20) be GRANTED. Further, based on the court's docket sheet, defendant Woods has not been served and should be dismissed under Rule 4(m) of the Federal Rules of Civil Procedure.

IT IS FURTHER RECOMMENDED that plaintiff's motion for default judgment (doc. #12) be DENIED and all outstanding motions be deemed MOOT.

                                                          Respectfully Submitted,

                                                         s/Thomas E. Rogers, III
                                                         Thomas E. Rogers, III
                                                         United States Magistrate Judge

July 26, 2010
Florence, South Carolina


      The parties' attention is directed to the important notice on the next page.